FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 2 3 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANSELMO GOMEZ,

                      Movant,

      -against-

UNITED STATES OF AMERICA,

                      Respondent.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-6348 (SLT)

**TOWNES, United States District Judge:**[1]

On September 5, 2008, movant Anselmo Gomez ("Movant" or "Gomez") pleaded guilty pursuant to a Plea Agreement in which he agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision," his conviction or sentence if the Court imposed a term of imprisonment of 121 months or less. Although Movant was subsequently sentenced to 121 months' imprisonment, Movant not only appealed, but now moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his attorney, Martin L. Schmukler, provided ineffective assistance by advising him to enter into the Plea Agreement. For the reasons set forth below, the Court finds that Movant has not established ineffective assistance of counsel or shown that he would not have entered into the Plea Agreement absent the alleged ineffective assistance. Since the waiver of appeal contained in the Plea Agreement is enforceable, the instant motion is denied.

## BACKGROUND

Movant was indicted by a grand jury on the charge of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C.

---

[1] The Court gratefully acknowledges the assistance of a student intern, Varun Gumaste of Columbia Law School, in the drafting of this memorandum and order.

1

§§ 841(a). Thereafter, Movant entered into a Plea Agreement with the Government in which he agreed to plead guilty to the lesser-included charge of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. Plea Agreement (attached as Ex. B to Government's Memorandum of Law in Opposition to the § 2255 Motion), ¶ 1. Under the terms of the Plea Agreement, Movant agreed "that his Guidelines rage [*sic*] and statutory minimum should be based on 100 grams or more of heroin." Id. at ¶ 2. The Government made no such promises regarding the Guidelines range, but only agreed to "take no position concerning where within the Guidelines range determined by the Court the sentence should fall" and to "make no motion for an upward departure ...." Id. at ¶ 5.

The Plea Agreement's estimate of Movant's Base Offense Level was based on the charged amount of one kilogram, not 100 grams. The Plea Agreement estimated that Movant's Base Offense Level, as calculated under section 2D1.1(c)(4) of the United States Sentencing Guidelines, would be 32 and that Movant would receive a two-level reduction for acceptance of responsibility. Id. at ¶ 2. In addition, the Government agreed that, if Movant pleaded guilty on or before September 5, 2008, the Government would move the Court pursuant to section 3E1.1(b) of the United States Sentencing Guidelines for an additional one-level reduction. Id. The Plea Agreement noted that an offense level of 30 "carries a range of imprisonment of 97 to 121 months," while an offense level of 29 "carries a range of imprisonment of 87 to 108 months." Id.

The Plea Agreement expressly warned Movant that these Guidelines estimates were not binding on the Government, the Probation Department or the Court. Id. at ¶ 3. The Plea Agreement stated that if, for any reason, including an error in the estimate, there were any differences between the estimate and the offense level determined by the Probation Department

or the Court, Movant would not be entitled to withdraw the plea and the Government would not be deemed to have breached the Plea Agreement. Id. The Plea Agreement also contained a waiver provision that expressly precluded Movant from filing an appeal or otherwise challenging, "by petition pursuant to 28 U.S.C. §2255 or any other provision," the conviction or sentence in the event that the Court imposed "a term of imprisonment of 121 months or below." Id. at ¶ 4.

Prior to the plea proceeding, Movant signed the Plea Agreement on a line below a statement which read, "I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily." Id. at p. 6. At the plea proceeding itself, Movant testified that he understood the terms of the Plea Agreement, had read it and reviewed its terms with his attorney, and had signed the document with the intention of indicating that he agreed with the terms of the Plea Agreement. Transcript of Sept. 5, 2008, Plea Proceedings (attached as Ex. A to Government's Memorandum of Law in Opposition to the § 2255 Motion), p. 12.

During the plea proceeding, the Court questioned Movant extensively about his understanding of the waiver provision contained in paragraph four of the Plea Agreement. The Court asked if Movant understood that, as a part of the Plea Agreement, he was agreeing not to file an appeal or otherwise challenge his conviction or sentence if the Court sentenced him to 121 months or less. Id. at p. 14. After Movant answered in the affirmative, the Court again asked: "[N]ormally you would have the right to appeal, but by accepting the terms of this agreement you are waiving or giving up that right, if the sentence is as outlined in the plea agreement. Do you understand?" Id. at pp. 14-15. Movant responded, "Yes, I understand." Id. at p. 15.

The Court then probed Movant's understanding of that portion of the Plea Agreement in which the Government estimated the likely adjusted offense level. Movant testified that he had seen the Government's estimate and had reviewed it with his attorney. Id. at p. 15. Movant's counsel confirmed this, representing to the Court that he had discussed with Movant "the sentencing guidelines and how they might be considered in his case." Id. at pp. 6-7. Movant was then asked if he understood that the Court might find that the estimate was incorrect after reviewing the presentence investigation report and that the Court would not be bound by the Government's estimate. Id. at pp. 15-16. Movant indicated to the Court that he understood.

In entering his guilty plea, Movant specifically stated that he was making the plea voluntarily and of his own free will. Id. at p. 19. He stated that no one had made any promises that caused him to plead guilty, and that no one had made any promise regarding what the sentence would be. Id. at p. 19. Based in part on these answers, the Court found that Movant had pleaded guilty voluntarily and fully understood the nature and consequences of his plea. Id. at p. 25.

Prior to sentencing, the Probation Department prepared a Presentence Investigation Report ("PSR"), which determined that, for guideline purposes, Movant had distributed in excess of 30 kilograms of heroin. Accordingly, the Probation Department concluded that the Base Offense Level, as prescribed by section 2D1.1(c)(2) of the United States Sentencing Guidelines, was 38—not 32, as estimated by the Government. In addition, the Probation Department opined that a five-level increase was justified because, inter alia, Movant was a "manager in a conspiracy." Accordingly, even with a two-level reduction for acceptance of responsibility and a further one-level reduction pursuant to section 3E1.1(b) of the Sentencing Guidelines, the Total

4

Offense Level calculated in the PSR was 40—not 29, as estimated by the Government. That level corresponded to a sentencing range of 292 to 365 months' imprisonment.

In a letter dated November 25, 2009, Movant's attorney stated that the Probation Department's guideline level was "grossly exaggerated." See Letter to Hon. Sandra L. Townes from Martin L. Schmukler, Esq., dated Nov. 25, 2009, p. 1. At sentencing, however, Movant's attorney did not raise any objections to the PSR. Transcript of Jan. 20, 2010, Sentencing (attached as Ex. C to Government's Memorandum of Law in Opposition to the § 2255 Motion), p. 5. While noting that "both parties" agreed that Movant technically did "merit an enhancement for management," the Government pointed out that Movant was the "least culpable of those that were running the show." Id. at p. 12. The Court adopted the Probation Department's calculation of the Total Offense Level, but sentenced Movant to only 121 months' imprisonment. Id. at pp. 14-16.

Although the Plea Agreement provided that Movant had waived his right to appeal a sentence of 121 months' imprisonment, Movant nonetheless appealed. Mr. Schmukler filed an Anders brief, arguing that Movant had knowingly and voluntarily waived his right to appeal. The Government also moved to dismiss the appeal as barred by the waiver contained in the Plea Agreement. By mandate issued February 10, 2011, the Second Circuit dismissed the appeal. The Supreme Court denied Movant a writ of certiorari on June 20, 2011.

On December 23, 2011, Movant filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The motion principally consists of a 34-page memorandum of law (hereafter, "Movant's Memo") and a 25-paragraph affidavit signed by Movant on December 19, 2011, which attaches various exhibits.

Movant's Memo acknowledges that "[t]he record shows that Gomez knowingly and voluntarily entered into an agreement not to challenge any sentence of one hundred twenty one months or less." Movant's Memo, p. 16. However, Movant's Memo notes that such waiver provisions are not enforceable if the Plea Agreement was entered into without the effective assistance of counsel. Id. Movant's Memo further notes that ineffective assistance can be established by showing that "counsel misled [the defendant] as to his bargaining position ... or as to the consequences of accepting the plea." Id. (citing Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008), and United States v. Monzon, 359 F.3d 110, 118 (2d Cir. 2004)).

Movant argues that his attorney committed "serious errors by advising movant to enter a guilty plea with a plea waiver provision that was based on a[n] erroneous calculation of the advisory guideline[s] for a defendant who possess[es] 100 grams or more of heroin." Id. at p. 18. Specifically, Movant contends that a "defense counsel representing a client in a drug conspiracy to distribute 100 grams or more of heroin should reasonably know that Base Offense Level 26 is the starting point under the Drug Quantity Table 2D1.1(7)." Id. at p. 23. Movant asserts that the PSR relied on the "erroneous miscalculated guidelines in the plea agreement," and that counsel's failure to correct the Base Offense Level calculation in the Plea Agreement "led to a Booker ... violation and an ultimate increase [*sic*] sentence of 121 ... months of imprisonment." Id. at p. 24 (emphasis omitted). Movant concludes that there is "a reasonable probability that his sentence was increased due to counsel's error." Id.

Movant does not argue, however, that the erroneous guidelines estimate affected his decision to plead guilty. To the contrary, Movant's Memo states:

> Gomez ... does not argue that he did not knowingly and voluntarily enter into the plea agreement, including the waiver provision. Indeed, a review of the Transcript of the Plea colloquy confirms that Gomez entered into the plea agreement knowingly and

6

> voluntarily. Gomez acknowledge [*sic*] the existence of the waiver
> provision, that he understood it, and that he had discussed it with
> his attorney.

Id. at pp. 28-29 (citations omitted). Yet, Movant maintains that "if he can show that he received ineffective assistance of counsel ... during the plea agreement process," he will have "shown that he did not waive his appeal rights knowingly and voluntarily ...." Id. at p. 28 (emphasis omitted).

Although Movant's Memo concludes by requesting that the Court vacate Movant's conviction and set aside his guilty plea, the motion principally seeks to challenge his sentence of 121 months' imprisonment. Movant's Memo lists three grounds, the first two of which relate to the enforceability of the waiver provision in the Plea Agreement.[2] In the third ground, Movant contends that the Court violated Booker by failing to properly calculate his Guidelines range, an error caused by relying on "erroneous legal premises provided by the Pre-Sentence Report and letter[s] from both ... Defense Counsel and The United States Attorney's Office." Id. at p. 14 (brackets added).

## *DISCUSSION*

### A. Waiver

Since Movant expressly waived his right to bring a §2255 motion in the event that the Court sentenced him to 121 months' imprisonment, the Court must first consider the validity of that waiver provision. "A defendant's knowing and voluntary waiver of his right to appeal a conviction and sentence within an agreed upon guideline range is enforceable." United States v. Pearson, 570 F.3d 480, 485 (2d Cir. 2009). However, if a movant can show that the plea agreement was not knowing and voluntary because it was entered into without effective

---

[2] In the first ground, Movant asks whether his attorney rendered ineffective assistance of counsel by advising Movant to enter into his Plea Agreement and the waiver provision. Movant's Memo, p. 13. In the second ground, Movant asks whether the plea waiver is "enforceable where the plea agreement was entered into without effective assistance of counsel." Id.

assistance of counsel, the waiver is invalid. See Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008); United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001). For the reasons set forth below, the Court finds that Movant has not established ineffective assistance of counsel or that the alleged ineffective assistance affected his decision to enter into the Plea Agreement.

Ineffective assistance of counsel claims are assessed under the two-prong test crafted by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail, Movant must (i) prove that his counsel's performance fell below an "objective standard of reasonableness" based on the "prevailing professional norms" and (ii) "affirmatively prove prejudice" to himself resulting from the counsel's performance. Strickland, 466 U.S. at 687-88, 693. To "affirmatively prove prejudice," Movant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a challenge to a guilty plea based on ineffective assistance of counsel, Movant must show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### B. Movant's Counsel's Performance

Movant's argument that counsel's performance fell below an objective standard of reasonableness is based on a misconception regarding how a Base Offense Level is calculated under the United States Sentencing Guidelines. Movant pleaded guilty to the charge of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. Plea Agreement, ¶ 1. Movant argues that the Base Offense Level was incorrectly estimated in the Plea Agreement to be 32, since the Base Offense Level for 100 grams of heroin is 26. Movant's Memo, p. 23 (citing U.S.S.G § 2D1.1(c)(7) (2009)). Movant concludes that his counsel rendered

ineffective assistance by, among other things, failing to correct the Plea Agreement or to object to the PSR's Base Offense Level calculation. Id. at pp.23-26.

The guidelines, however, focus on "relevant conduct," rather than "convicted conduct." See United States v. Jones, 531 F.3d 163, 174-75 (2d Cir. 2008); United States v. Shonubi, 103 F.3d 1085, 1088-89 (2d Cir. 1997). Section 1B1.3(a) of the Sentencing Guidelines provides that the Base Offense Level is determined based on:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
>
>> (i) within the scope of the jointly undertaken criminal activity,
>>
>> (ii) in furtherance of that criminal activity, and
>>
>> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ....

In other words, "the 'relevant conduct' for a defendant convicted of a drug offense includes all of the additional drugs, *beyond the quantity in the offense of conviction*, that were unlawfully distributed or possessed with intent to distribute either by the defendant personally or by the reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity." Shonubi, 103 F.3d at 1089 (citing U.S.S.G. § 1B1.3(a)(1), (2)) (emphasis added). For example:

> a defendant convicted of distributing 50 grams of heroin may be punished with imprisonment of up to 41 months, but if the sentencing judge finds that he (or a confederate acting foreseeably)

9

> also distributed an additional 550 grams, the defendant may be
> punished for the aggregate 600 grams with imprisonment of up to
> 97 months, precisely the same punishment he could have received
> if he had been charged with and convicted of distributing the entire
> quantity of 600 grams.

Id.

"A Sentencing Guidelines calculation must begin with an identification of the defendant's relevant conduct, which in the case of a drug possession offense includes the quantity of drugs controlled by the defendant, whether as a principal or as an aider and abettor." Jones, 531 F.3d at 174-75. "The quantity of drugs attributable to a defendant is a question of fact." Id. at 175. The Government, having conducted the investigation which culminated in the indictment, is typically in possession of facts from which an accurate estimate of the Base Offense Level can be made. At the time the Plea Agreement was drafted, the Government apparently believed the quantity of drugs attributable to Movant to be one kilogram, as evidenced by the fact that the Government estimated a Base Offense Level of 32. See U.S.S.G. § 2D1.1(c)(4). Since that estimate was consistent with the quantity of heroin charged in the indictment, Movant's counsel would have had no reason to question it.

The Probation Department subsequently determined that the quantity of drugs attributable to Movant was 30 kilograms—30 times the Government's estimate. Although Movant's counsel characterized the PSR's calculation of the Guidelines range as "grossly exaggerated," see Letter to Hon. Sandra L. Townes from Martin L. Schmukler, Esq., dated Nov. 25, 2009, p. 1, he did not object to this determination or to any other aspect of the PSR because he correctly anticipated that Movant would receive a sentence far below the Guidelines range. Moreover, Movant does not allege that that his attorney had any basis for challenging the Probation Department's

Guidelines calculations or any other portion of the PSR. Accordingly, the Court cannot find that counsel's performance was substandard in any way.

## C. Prejudice

Even assuming that Movant could establish that his attorney's performance fell below an objective standard of reasonableness, there is no evidence that counsel's alleged errors with respect to calculation of the Total Offense Level had any effect on Movant's decision to plead guilty. Indeed, Movant expressly *denies* that his plea was less than knowing and voluntary. Movant states:

> Gomez ... does not argue that he did not knowingly and voluntarily enter into the plea agreement, including the waiver provision. Indeed, a review of the Transcript of the Plea colloquy confirms that Gomez entered into the plea agreement knowingly and voluntarily. Gomez acknowledge [*sic*] the existence of the waiver provision, that he understood it, and that he had discussed it with his attorney.

Movant's Memo, pp. 28-29 (citations omitted).

Moreover, even if Movant's counsel provided Movant with an underestimate of his likely adjusted offense level, there is no evidence that the underestimate affected Movant's decision to plead guilty. Movant was informed, both in the Plea Agreement and at the plea proceeding, that the Government's estimate of the Total Offense Level was not binding. At the plea proceeding, Movant testified that he understood that the Court might find that the estimate was incorrect after reviewing the PSR and that the Court would not be bound by the Government's estimate. Transcript of Sept. 5, 2008, Plea Proceedings, pp. 15-16. Accordingly, Movant was well aware that he should not rely on the estimate set forth in the Plea Agreement.

Furthermore, the Total Offense Level only determined the Guidelines range, not the actual sentence imposed on Movant. Although a sentencing court is required to accurately

11

calculate the range of sentences prescribed by the guidelines, that range was not particularly important in this case because both Movant's counsel and the Government recommended a sizeable downward departure from the Guidelines range. Indeed, although the Court calculated the Guidelines range as between 292 and 365 months, the Court imposed a term of imprisonment of only 121 months. Movant was well aware that he could receive such a sentence, as he had expressly agreed not to appeal or otherwise challenge his conviction or sentence if he received a sentence of 121 months or less. Given these facts, the Court cannot find that there is a reasonable probability that Movant would not have pleaded guilty but for his attorney's failure to accurately estimate Movant's Base Offense Level under the Sentencing Guidelines.

Since Movant has not shown that his Plea Agreement was anything other than knowing and voluntary, the provision contained in that Plea Agreement which precludes Movant from bringing this § 2255 motion is enforceable. Even if it were not, the Court would not find that a Booker violation occurred. Movant incorrectly assumes that the Probation Department's Guidelines calculations and this Court's determination of the Guidelines range was based on an incorrect Base Offense Level. As discussed above, the Guidelines calculation was based on facts disclosed in the PSR which were not contested at sentencing and are not contested in the instant motion.

## *CONCLUSION*

For the reasons set forth above, the instant motion to vacate, set aside or correct Movant's sentence pursuant to 28 U.S.C. § 2255 is denied.

**SO ORDERED.**

/s/ Sandra L. Townes
/ SANDRA L. TOWNES
United States District Judge

Dated: May 18, 2016
  Brooklyn, New York